<pre>
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF KENTUCKY
 2                         LOUISVILLE DIVISION


 3
     UNITED STATES OF AMERICA,    )    Case No. 3:15-CR-00083-DJH
 4                                )
            Plaintiff,            )
 5                                )
        VS.                       )
 6                                )
     PATRICK NEWMAN,              )
 7                                )    August 19, 2015
            Defendant.           )    Louisville, Kentucky
 8

 9                         *  *  *  *  *

10            TRANSCRIPT OF CHANGE OF PLEA HEARING
                 BEFORE HONORABLE DAVID J. HALE
11                 UNITED STATES DISTRICT JUDGE

12                         *  *  *  *  *

13   APPEARANCES:

14   For United States:       Jo E. Lawless
                              U.S. Attorney's Office
15                            717 West Broadway
                              Louisville, KY 40202
16
     For Defendant:           Brian Butler
17                            Dathorne & Butler, LLC
                              600 West Main Street, Suite 500
18                            Louisville, KY 40202

19   [Defendant present.]

20

21
                          Dena Legg, RDR, CRR, CCR-KY
22                         Official Court Reporter
                             232 U.S. Courthouse
23                         Louisville, KY 40202
                              (502) 625-3778
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
</pre>

1        (Begin proceedings in open court at 1:45 p.m.)

2            DEPUTY CLERK:  Judge, we're here on 3:15-CR-83, *United*

3    *States of America v. Patrick Newman* for an arraignment and entry

4    of plea.

5            MS. LAWLESS:  Good afternoon, Your Honor.  Jo Lawless

6    on behalf of the United States.

7            MR. BUTLER:  Good afternoon, Your Honor.  Brian Butler

8    on behalf of Mr. Newman.  He's at the podium, sir.

9            THE COURT:  I understand, Mr. Butler, that following

10   arraignment this afternoon, that your client wishes to enter a

11   plea of guilty to all 19 counts -- I believe it's 19.  I might

12   have written that down wrong -- 14 charged by the United States

13   in the information.  Is that correct?

14           MR. BUTLER:  Yes, sir, he does.

15           THE COURT:  Let's first address the information.

16   Mr. Butler, have you advised Mr. Newman of the differences

17   between being charged by information and being charged by the

18   grand jury via indictment?

19           MR. BUTLER:  Yes, sir, I have.

20           THE COURT:  And have you advised him of his right

21   which he will waive in order to plead to an information to have

22   this case presented to a federal grand jury?

23           MR. BUTLER:  Yes, sir, I have advised him.

24           THE COURT:  Mr. Newman, let me ask you directly, do

25   you understand that you have the right to have this matter

1    presented to a federal grand jury, which may or may not return

2    an indictment against you?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you understand that if you waive your

5    right to have this case presented to a grand jury, the case is

6    going to move forward just as it would had they indicted you?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Have you had an opportunity to discuss

9    this with your attorney?

10             THE DEFENDANT:  Yes, sir, I have.

11             THE COURT:  Mr. Newman, has anyone threatened you or

12   promised you anything if you waive your right to have this

13   matter presented to the grand jury?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Let me then now ask you, do you wish to

16   waive your right to have the case presented to a federal grand

17   jury and instead proceed on the charges contained in the

18   information?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And this is, I see, a waiver form.

21   Mr. Butler, it contains your signature; is that correct?

22             MR. BUTLER:  Yes, sir, it does.

23             THE COURT:  I find that the waiver is knowing and

24   valid and I'll accept it.  And I will sign the waiver form and

25   it will be entered into the record.

1          We'll proceed then to arraignment.  Mr. Butler, have you had

2     ample opportunity to discuss this case with Mr. Newman?

3               MR. BUTLER:  Yes, sir, I have.

4               THE COURT:  And specifically the charges contained in

5     the information?

6               MR. BUTLER:  Yes, sir.

7               THE COURT:  Does Mr. Newman admit, Mr. Butler, that he

8     is the person named in this information?

9               MR. BUTLER:  Yes, sir, he does.

10              THE COURT:  Mr. Newman, do you understand the charges

11    that have been leveled against you by the United States in the

12    information?

13              THE DEFENDANT:  Yes, I do.

14              THE COURT:  Ms. Lawless, if you would summarize the

15    charges in each count and state any statutory minimum or maximum

16    penalties that are applicable to those charges.

17              MS. LAWLESS:  Yes, Your Honor.  Count 1 charges

18    Mr. Newman with the knowing production -- that's kind of the

19    shorthand term that we use -- of child pornography through

20    online means and communication with a minor.

21         Count 1 carries a mandatory minimum term of imprisonment of

22    not less than 15 years, not more than 30 years in prison, a

23    $250,000 fine, or both, and not less than five years and not

24    more than life of supervised release.

25         Count 2 is an online enticement charge, Your Honor.  That

charge has to do with the same minor and during the same time period as that's set out in Count 1, but it's a little bit of a different charge, using a facility or means of interstate commerce to persuade, induce, entice an individual who hadn't reached the age of 18 to engage in sexual activity for which a person can be charged with a criminal offense.

Count 2 has a mandatory minimum term of imprisonment of not less than 10 years, a maximum term of imprisonment of life, $250,000 fine, or both, and not less than five years and not more than life term of supervised release.

Counts 3 through 17 all involve different victims, but they all involve the same criminal charge under federal law.  And, again, they would be independent charges involving the production, an attempted production with regard to one individual of child pornography.

Each of those counts carries a mandatory minimum term of imprisonment of not less than 15 years, a maximum potential penalty of 30 years per count, a $250,000 fine, or both, and not less than five years and it could be any number of years up to and including life of supervised release.

Count 18 is a distribution or sometimes referred to also as distribution -- transportation or distribution of child pornography.  That count carries a mandatory minimum term of imprisonment of not less than five years in prison.  Twenty years is the maximum potential penalty in prison, $250,000 fine,

| | |
|---|---|
| 1 | or both, and not less than five years and it could be any number |
| 2 | of years, including up to life, of supervised release. |
| 3 | Count 19 is the last charge and it involves possession of |
| 4 | child pornography.  There is no mandatory minimum term of |
| 5 | imprisonment, Your Honor.  The maximum potential penalties are |
| 6 | 10 years in prison, a $250,000 fine, or both, and not less than |
| 7 | five years and it could be up to and including any number of |
| 8 | years, including life, for supervised release. |
| 9 | THE COURT:  Have you calculated the combined minimum |
| 10 | and maximum penalty, Ms. Lawless? |
| 11 | MS. LAWLESS:  Just one second.  Well, actually, it |
| 12 | would be not less than 15 and not more than life.  The maximum |
| 13 | potential fine -- |
| 14 | THE COURT:  250,000 versus or times -- |
| 15 | MS. LAWLESS:  Times 19.  It's in multiple millions. |
| 16 | Just one second. |
| 17 | THE COURT:  4.75. |
| 18 | MR. BUTLER:  4,750,000, Your Honor. |
| 19 | MS. LAWLESS:  Yes, sir, that's correct, and not less |
| 20 | than five years and it could be up to life for supervised |
| 21 | release. |
| 22 | THE COURT:  Mr. Newman, do you understand the charges |
| 23 | against you as outlined by the prosecutor? |
| 24 | THE DEFENDANT:  Yes, sir. |
| 25 | THE COURT:  And, Mr. Butler, does Mr. Newman wish to |

1    waive formal reading of the information?

2             MR. BUTLER:  Yes, sir, he does.

3             THE COURT:  And so I understand that he wishes to

4    plead guilty to all 19 counts in the information; is that

5    correct?

6             MR. BUTLER:  Yes, sir, he does.

7             THE COURT:  And have you had occasion, Mr. Butler, to

8    explain your client's rights to him?

9             MR. BUTLER:  Yes, sir, I have.

10            THE COURT:  Mr. Newman, is it your intention to plead

11   guilty to all 19 of the counts in the information against you?

12            THE DEFENDANT:  Yes, sir, it is.

13            THE COURT:  Before I accept your guilty plea, there

14   are a number of questions that I need to ask you to ensure that

15   your plea of guilty is valid.  If at any time during the course

16   of our discussion you do not understand a question, you'll need

17   to let me know.  Agreed?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Those charged criminally have the right to

20   remain silent, Mr. Newman, but in order to enter a valid guilty

21   plea, you need to waive that right in order for me to ask you

22   questions.  Do you wish to waive your right in order to answer

23   my questions?

24            THE DEFENDANT:  Yes, sir, I do.

25            THE COURT:  Madam Clerk, if you would administer the

1   oath or affirmation to the defendant.

2           DEPUTY CLERK:  Raise your right hand.

3       (Defendant sworn.)

4           THE COURT:  Mr. Newman, having been sworn, do you

5   understand that your answers to my questions will be subject to

6   the penalties of perjury or making a false statement if you do

7   not answer truthfully?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  If you would, give me your full name.

10          THE DEFENDANT:  Patrick Morris Newman.

11          THE COURT:  And do you live here in Louisville?

12          THE DEFENDANT:  Yes, sir, I do.

13          THE COURT:  And how old are you?

14          THE DEFENDANT:  I'm 33.

15          THE COURT:  How far did you go in school, Mr. Newman?

16          THE DEFENDANT:  I obtained my master's in teaching.

17          THE COURT:  Where did you get that?

18          THE DEFENDANT:  University of Louisville.

19          THE COURT:  Where have you most recently been

20  employed?

21          THE DEFENDANT:  Trinity High School.

22          THE COURT:  In what capacity?

23          THE DEFENDANT:  As a teacher and as a football coach.

24          THE COURT:  Are you now under the influence of any

25  drugs or alcohol?

1            THE DEFENDANT:  No, sir.

2            THE COURT:  Have you ever been treated for alcohol or

3    drug addiction?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Are you currently under the care of a

6    physician or other healthcare professional?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  Have you ever been treated for a mental

9    condition or been hospitalized in a mental treatment facility?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  And so I take it you understand fully

12   what's happening here today?

13           THE DEFENDANT:  Yes, sir, I do.

14           THE COURT:  Mr. Butler, have you had any problems

15   communicating with Mr. Newman during the course of your

16   representation?

17           MR. BUTLER:  None whatsoever, sir.

18           THE COURT:  Have you met with him, presumably today

19   and previously, to work on his case?

20           MR. BUTLER:  Yes, sir.

21           THE COURT:  And has he been able to assist you in that

22   preparation?

23           MR. BUTLER:  Yes, he has.

24           THE COURT:  Do you believe he's understood the advice

25   that you've given him?

1          MR. BUTLER:  Yes, sir, I believe that.

2          THE COURT:  And has he assisted you in preparing your

3    defense strategy?

4          MR. BUTLER:  Yes, sir.

5          THE COURT:  Do you have any doubt as to his competence

6    to plead guilty at this time?

7          MR. BUTLER:  No, Your Honor.

8          THE COURT:  Based upon the defendant's answers and the

9    representations of counsel, I find that Mr. Newman is competent

10   to enter a guilty plea to all of the charges contained in the

11   information at this time.

12      We have covered this, I'm sure, already, Mr. Newman, but I

13   need to ask you again.  Have you had sufficient opportunity to

14   discuss this case with your counsel?

15         THE DEFENDANT:  Yes, sir, I have.

16         THE COURT:  And are you fully satisfied with the

17   advice that he's given you?

18         THE DEFENDANT:  So far, yes, sir.

19         THE COURT:  We now need to cover the essential rights,

20   Mr. Newman, that you will be giving up as a result of pleading

21   guilty.  Do you understand that you have the right to assistance

22   of counsel at every stage of the proceedings against you, and if

23   necessary, an attorney will be appointed without charge for you

24   if you cannot afford one?

25         THE DEFENDANT:  Yes, sir, I do.

1          THE COURT:  And do you understand that you have a

2   right to a trial by jury and that a plea of guilty constitutes a

3   waiver of that right to trial?  And if I accept your plea of

4   guilty, there will be no further trial of any kind.

5          THE DEFENDANT:  Yes, sir, I do.

6          THE COURT:  Do you understand that if there was a

7   trial, you would be presumed to be innocent and the United

8   States would bear the burden of proving you guilty beyond a

9   reasonable doubt before you could be convicted?

10          THE DEFENDANT:  Yes, sir, I do.

11          THE COURT:  And do you understand that at trial your

12   attorney could cross-examine the witnesses that are offered by

13   the United States and object to evidence offered by the United

14   States?  He could also offer evidence in your behalf, and he

15   could compel the presence of witnesses to appear and testify in

16   your behalf by subpoena and thereby present your side of the

17   case to me and to a jury.

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand also that at a trial you

20   have a right to testify, if you choose to do so, but that you

21   also have a right not to testify and that no one could force you

22   to testify at a trial?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  You understand that you have the right to

25   plead not guilty and you have the right to persist in that not

```
 1    guilty plea, and that you have no obligation to plead guilty
 2    here today if you don't wish to do so?
 3              THE DEFENDANT:  Yes, sir.
 4              THE COURT:  If you plead guilty, do you understand
 5    that you will also have to waive your right not to incriminate
 6    yourself, since I am going to ask you more questions about what
 7    you did in order to satisfy me that you are guilty as charged,
 8    and you will have to acknowledge that guilt here in court today?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  Earlier during the arraignment phase of
11    our proceeding, Ms. Lawless outlined the nature of the charges
12    against you and the potential penalties.  So, again, let me ask
13    you if you understand these charges?
14              THE DEFENDANT:  Yes, I do.
15              THE COURT:  Ms. Lawless, what, again, are the minimum
16    and maximum penalties that we just talked about?
17              MS. LAWLESS:  Yes, sir.  Collectively -- would you
18    like me to go by count or give you the combination?
19              THE COURT:  No, I think the combined is fine.
20              MS. LAWLESS:  Okay.  Not less than five years -- 15
21    years' imprisonment, not more than life imprisonment.  He faces
22    a $4,750,000 potential fine, if everything is stacked on top of
23    one another, and at least five years and it could be up to and
24    including any number of years and life for potential.
25              THE COURT:  Do you understand these potential
```

1    penalties, Mr. Newman?

2              THE DEFENDANT:  Yes, sir, I do.

3              THE COURT:  Has Mr. Butler had an opportunity to talk

4    with you about what supervised release is?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  So you understand that following a term of

7    incarceration, you would be subject to some form of oversight

8    and supervision by the U.S. Probation Office?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  A minimum, as Ms. Lawless has outlined, of

11   five years and up to the rest of your natural life.

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Mr. Butler, have you had an opportunity to

14   discuss these potential penalties with Mr. Newman?

15             MR. BUTLER:  Yes, sir, I have.

16             THE COURT:  And have you also talked to him about

17   supervised release?

18             MR. BUTLER:  Yes, sir, I have.

19             THE COURT:  Do you understand, Mr. Newman, if you

20   plead guilty, the court will be asked to impose restitution to

21   any victim or victims of your crimes?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Ms. Lawless, have the victims been

24   notified of their rights under federal law?

25             MS. LAWLESS:  Yes, sir, the victims that we have been

1    able to identify up to this point have been notified.  We're

2    still in that process, Your Honor.  The investigation is ongoing

3    with regard to identifying beyond screen names.

4              THE COURT:  Thank you.

5         Mr. Newman, do you also understand that the court has been

6    asked to order forfeiture to the United States of any property

7    that's -- that you used in or derived from the commission of

8    your crime?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that the court will

11   order the special assessment of $100 for each of the 19 felony

12   counts as required by 18 U.S.C. 3013?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Are you presently on probation or parole

15   for any other criminal infraction?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  And you are a citizen of the United

18   States?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Has anyone threatened you, or anyone close

21   to you, or forced you in any way to plead guilty to these

22   charges?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Ms. Lawless, do the parties have a written

25   plea agreement?

1          MS. LAWLESS:  We do not, Your Honor.  This is an open

2   plea.

3          THE COURT:  So, Mr. Newman, do you understand that

4   without a plea agreement the United States will be free at the

5   sentencing hearing to argue for any sentence permitted by law?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Have any other promises been made to you

8   to cause you to plead guilty today?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Have you and your attorney talked about

11  how the Sentencing Commission guidelines may be applied in your

12  case?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  So then you know that the guidelines are

15  not mandatory, but the court will calculate a guideline range

16  and will consider it, along with any statutory minimums or

17  maximums, and will consider it as well as any departures or

18  other statutory factors in determining an appropriate sentence?

19  Do you understand that process?

20         THE DEFENDANT:  Yes, sir, I do.

21         THE COURT:  And, Mr. Butler, have you been able to

22  discuss that process with Mr. Newman?

23         MR. BUTLER:  Yes, sir, we have.

24         THE COURT:  You understand, Mr. Newman, that the court

25  will not be able to determine the sentence for your case until

1    after a presentence report has been completed and you and your

2    counsel and the United States have had an opportunity to

3    challenge the facts as reported by the U.S. probation officer?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you also understand that under some

6    circumstances you or the United States may have the right to

7    appeal any sentence that I impose?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Do you also understand that parole in the

10   federal system has been abolished, and that if you are sentenced

11   to prison, you will not be released on parole?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you understand that while -- without a

14   plea agreement, your counsel will be able to advocate in your

15   behalf at the sentencing hearing?  If you do receive a sentence

16   that is more severe than you expect, you will not be able to

17   withdraw your guilty plea on that basis.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand that a mistake in your

20   or your attorney's prediction or calculations regarding a

21   potential sentence of what -- or of what guideline sentence or

22   statutory minimum may apply will also not give you the right to

23   withdraw your guilty plea?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And do you understand that no one can make

1    a promise or otherwise bind the court in my decision-making

2    process?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  We're now going to turn to the factual

5    basis for your guilty plea, Mr. Newman.

6         Let me ask, Ms. Lawless, if you would, summarize for the

7    court what the evidence would be on each of the 19 counts

8    contained in the information.

9              MS. LAWLESS:  Yes, Your Honor.  As I'm sure you're

10   aware, this case started out with a criminal complaint that was

11   filed.  And the affidavit in that criminal complaint gives you a

12   little bit of the background and what we would be prepared to

13   prove to a jury if the matter went to trial.

14        The investigation started out earlier actually late last

15   year/early this year when the National Center For Missing and

16   Exploited Children received a cyber tip from Twitter regarding

17   the upload of child pornography images through Vine, which is an

18   online video sharing website owned by Twitter.  The same

19   internet protocol or IP address was being used for those various

20   uploads that had occurred in late December of 2014.

21        Law enforcement officials began an investigation at that

22   point and were able to identify the child who was depicted in

23   those images, interviewed him and, through some additional

24   investigation, were able to identify Mr. Newman as an adult who

25   had been communicating with that child during the course of

1   those uploads through Vine.

2       Law enforcement officials forwarded that information here to

3   Louisville, where we asked for, obtained, and then executed a

4   federal search warrant on Mr. Newman's home here in Louisville

5   in early June.

6       Homeland security investigations within the Department of

7   Homeland Security arrested Mr. Newman that day, which was on

8   June 1st.  That day they also talked to him.  And during a

9   recorded post-Miranda interview, he made some admissions to them

10  in conjunction with that initial part of the investigation,

11  including that he was sexually interested in boys ages 13 to 17.

12  He admitted to communicating with minors through social media

13  sites and applications, such as Kik, Vine, Snapchat, and Topix

14  for approximately the last two years.

15      Forensic examinations were conducted on the digital media

16  that was seized from Mr. Newman's house that day, including his

17  telephone.  I do think it's important for the court to know that

18  all of the information and the evidences that was collected from

19  that point forward came from his telephone or online

20  applications that was seized that day with the search warrant.

21      Based on some of the representations that were made during

22  the course of the communications of those online communications,

23  law enforcement was able to determine that Mr. Newman had in

24  fact been communicating with a significant number -- ultimately

25  we figured out, based on a review of those communications or

1    chats, through video and also typing that he had talked to 16

2    different minors in a variety of states.  The children range in

3    age from 12 to 17, and there were three from Kentucky, including

4    at least one of whom Mr. Newman met in person, engaged in sexual

5    activity with, and produced child pornography that he later

6    shared.

7        There were three from Kentucky, as I mentioned before.

8    There were also, based on their communications, minors from

9    Texas, Ohio, Indiana, Colorado, North Carolina, New York, Utah,

10   Oregon, and the United Kingdom.

11       When they continued to look at the actual chats, as well as

12   the images, videos, and still images that were being traded back

13   and forth, an effort was undertaken at that point to try and

14   begin to identify victims and send out leads to law enforcement.

15       As I mentioned just a moment ago, we knew about the child in

16   Texas that started the entire investigation.  And the charges

17   that are set out in Counts 1 and 2 have to do with those initial

18   charges that were brought for consideration before the

19   magistrate judge for the search warrant and then the basis of

20   the arrest that occurred in June.  They have to do with the

21   online communication with the child who was 13 and then turned

22   14-years-old.

23       During those communications, Mr. Newman asked for some very

24   specific things, including sadistic images that involved -- and

25   this was in the original complaint -- a plunger.  Because of the

1    very specific nature of those requests, that is the basis of

2    Count 2, the enticement charge.  He was giving very specific

3    instructions.  He also received other images and traded images

4    with the child in Texas, and that's Count 1, the production

5    charge there.

6        When we began to look then at the additional communications

7    through the telephone and the online applications, we were able

8    to identify, based on what they were saying to one another --

9    and you start to kind of see a pattern, Your Honor, and this is

10   what we would show to the jury.  Often it's an "ASL," a

11   question, age, sex, location.  The person would give their age,

12   give their sex and say where they lived.  The two would talk

13   about a variety of things and then the exchange of materials and

14   information and chats about -- that are sexual in nature would

15   begin to take place.

16       Over that course of time, this is what you would see in

17   Counts 13 -- or Count 3 -- I'm sorry -- up to -- next to the

18   last two charges, which have to do with the distribution and

19   possession of child pornography.  So for Counts 3 through 17,

20   they involve John Does that have been identified, and I will

21   just give you ages where we specifically have them.

22       Count 3, age 17 in Utah.  There was a request for child

23   pornography for sexually explicit material that the 17-year-old

24   sent to Mr. Newman.

25       Count 4 is John Doe 3 from Texas, age 16, again, request

1    from Mr. Newman.  And during the course of the conversations, he

2    also talked to that person about meeting another individual in

3    person to engage in sexual activity with, which is set out in

4    Count 5.

5        John Doe 4, who is from the Louisville area, here in

6    Kentucky, age 15.  They met in person on approximately three

7    occasions, during which Mr. Newman made videotapes that he

8    shared with that child and then shared with other people.  And

9    I'll talk about that a little bit later with regard to the

10   transportation and distribution charge.

11       Count 6 involves John Doe 5 from Indiana, age 17.  It's the

12   same kind of conduct where he's requesting for materials and

13   information about them, and they provide them to him in varying

14   states, sometimes still images, sometimes videos that they share

15   with him and he shares things back.

16       Count 7 is John Doe from New York, age 15.

17       Count 8 is John Doe 7 from North Carolina, age 15, same type

18   of conduct.

19       Count 9 is John Doe 8 from Kentucky, age 15.  They were

20   exchanging pictures back and forth with one another, discussed

21   meeting, but we do not have information because we only have

22   what was contained on his phone that we could see.  So we don't

23   have everything that happened before and later, but there were

24   discussions with regard to meeting at that point.  But what we

25   know from what we gathered from the phone was that images were

1    in fact shared back and forth.

2         Count 10 involves John Doe 9.  I do not have a location but

3    have an age of 16.  For John Doe 9, again, sending back and

4    forth pictures involving sexual activity by the minor.

5         Count 11 is John Doe 10 from the United Kingdom, age 17,

6    same type of conduct.

7         Count 12 is from Colorado, age 15, same type of conduct.

8         Count 13 identifies John Doe 12, who is from Ohio who is age

9    17, same type of conduct.

10        Count 14 is John Doe 13, again, from Ohio, but it's a

11   different person, age 16, pictures that were sent back and forth

12   both ways.

13        Count 15 is John Doe 14 from Kentucky, around the Louisville

14   area, age 16.  Pictures back and forth, again, there.

15        Count 16, which is John Doe 15 from Ohio, age 15.  And in

16   this particular one you might notice, Your Honor, Count 16

17   charges an attempt.  There are communications back and forth

18   between Mr. Newman and John Doe 15 in Ohio where images are sent

19   by Mr. Newman to the 15-year-old and from the 15-year-old back.

20   The images that we saw involve the buttocks of the child, but

21   there was more discussion about more specific things that

22   Mr. Newman wanted to see based on him sending images and giving

23   more specific instructions.  Even though we could not retrieve

24   that from the phone, the exact pictures that would be

25   specifically sexually explicit conduct, there is that

1  substantial step, and that's why this particular count is

2  charged as an attempt.

3      Count 17 is John Doe 16 from Oregon, age 12, asked for

4  images and the child responded and sent them to him.

5      And I think that takes us through all of the various victims

6  in the 16 counts of production on the dates that are set out in

7  the information.

8      Count 18 charges Mr. Newman with knowingly transporting or

9  distributing child exploitation or child pornography materials.

10  The basis for this particular charge and the proof that we would

11  be able to present to the jury, Your Honor, is that when we

12  looked at Mr. Newman's phone and did a forensic analysis, the

13  agents were able to identify different folders that had names,

14  screen names associated with the communications with that

15  person, whether they were in Kik, or Grindr, or other social

16  media communication applications.

17      When they pulled all of those, there were a total of 56

18  people with whom he was communicating, and that does not include

19  the minors that we talked about earlier specifically with regard

20  to the production.

21      We cannot tell from looking at those communications -- and

22  they have all been reviewed -- the age necessarily of the person

23  that he might have been talking with at any given time.

24  However, what we were able to see in looking at those

25  communications is that Mr. Newman would talk to them about

1    sexual activity involving minors, including meeting with what he

2    described as a 17-year-old and gave descriptions of that meeting

3    that match what we have described for the court of one of the

4    minors that lived in the Louisville area who was in fact 15.

5    Mr. Newman indicated that he believed that he was 17.

6    Nevertheless, he was a minor who was under the age of 18.

7         While talking with those individuals about meeting this

8    particular minor, he also talks about sharing videos.  He talks

9    about what they did and then offers to send them to the

10   individuals.

11        And when we looked at those and compared that with the

12   information that we had about when we knew that Mr. Newman met

13   with the minor and knew that he had created the videos and

14   looked at the contents, that matches up.

15        So in addition to sharing those specific videos of child

16   pornography, there are other instances where he shared different

17   images of child pornography.  And I don't want to mislead the

18   court and say that with regard to the child here that he met in

19   person and produced with that he shared those images with 56

20   more people.  We know that he shared them with some other

21   people, but the 56 individuals that he was sharing back and

22   forth with involved other materials, not just -- and didn't even

23   necessarily always include the videos that had been created with

24   the child that he met in person.  That would be what we would be

25   prepared to prove with regard to Count 18.

1      And, finally, with regard to Count 19, as I mentioned early

2   on, Mr. Newman had his telephone there the day that they

3   executed the search warrant.  The phone was taken at that time

4   and reviewed.

5      When law enforcement agents looked at the contents of that

6   phone and also looked at Dropbox, which is a place that you can

7   store photos, and videos, and images of that nature in kind of

8   what we generally refer to as "the cloud," you can see it on the

9   phone.  You can see the connection.  When you look in that

10  Dropbox, the agents were able to see that he had 87 video files

11  of child pornography that when they are reviewed depict young

12  boys that are engaged in sexually explicit conduct.

13     So separate and apart, distinct from the production charges,

14  there were also videos that he had under his possession,

15  direction, and control through his Dropbox account that were

16  seized on the date that the search warrant was executed.

17     And that -- I know it was a little bit long-winded -- but is

18  a nutshell of what we would be prepared to prove if the matter

19  went to trial.

20          THE COURT:  Mr. Newman, did you hear everything that

21  Ms. Lawless outlined?

22          THE DEFENDANT:  Yes, sir, I did.

23          THE COURT:  And do you agree with her summary of the

24  facts that the United States is prepared to present against you?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Is it true that you did all of the things

2     that the prosecutor accuses you of doing?

3          THE DEFENDANT:  Yes, sir, it is.

4          THE COURT:  Are you guilty of all of the crimes

5     charged in the information against you?

6          THE DEFENDANT:  Yes, sir, I am.

7          THE COURT:  I find that there is a factual basis for

8     the guilty plea.

9        Mr. Newman, I'm now going to ask you to enter your plea in a

10    formal -- more formal fashion.  With respect to the case of the

11    *United States v. Patrick Newman*, Case Number 15-CR-83, how do

12    you plead to Count 1 of the information?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  As to Count 2 of the information?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  As to Count 3 of the information?

17         THE DEFENDANT:  Guilty.

18         THE COURT:  And as to Count 4 of the information?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  As to Count 5 of the information?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  And as to Count 6 of the information?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  As to Count 7 of the information?

25         THE DEFENDANT:  Guilty.

```
 1            THE COURT:  As to Count 8 of the information?
 2            THE DEFENDANT:  Guilty.
 3            THE COURT:  As to Count 9 of the information?
 4            THE DEFENDANT:  Guilty.
 5            THE COURT:  As to Count 10 of the information?
 6            THE DEFENDANT:  Guilty.
 7            THE COURT:  As to Count 11 of the information?
 8            THE DEFENDANT:  Guilty.
 9            THE COURT:  As to Count 12?
10            THE DEFENDANT:  Guilty.
11            THE COURT:  As to Count 13?
12            THE DEFENDANT:  Guilty.
13            THE COURT:  As to Count 14?
14            THE DEFENDANT:  Guilty.
15            THE COURT:  As to Count 15?
16            THE DEFENDANT:  Guilty.
17            THE COURT:  As to Count 16?
18            THE DEFENDANT:  Guilty.
19            THE COURT:  As to Count 17?
20            THE DEFENDANT:  Guilty.
21            THE COURT:  As to Count 18 of the information?
22            THE DEFENDANT:  Guilty.
23            THE COURT:  As to Count 19 of the information?
24            THE DEFENDANT:  Guilty.
25            THE COURT:  We will let pleas of guilty be entered for
```

1    this defendant as to all 19 counts contained in the information.

2        Ms. Lawless, anything else that we need to cover here this

3    afternoon?

4            MS. LAWLESS:  No, sir.

5            THE COURT:  Mr. Butler?

6            MR. BUTLER:  No, Your Honor.

7            THE COURT:  Have we covered everything?  We need to

8    fix a date for the sentencing hearing.  And I believe that we've

9    already talked about the date of December the 16th; is that

10   correct?

11           MS. LAWLESS:  Yes, sir.

12           MR. BUTLER:  Yes, sir.

13           THE COURT:  And so the sentencing hearing will be

14   mostly here in this same courtroom at 1:30 in the afternoon on

15   December 16th, 2015.  I assume the defendant will remain on the

16   current -- in the current custody of the U. S. Marshal's

17   Service.

18           MS. LAWLESS:  Yes, Your Honor.  I'm not aware of any

19   legal reason for that to change.

20           THE COURT:  There have been no motions to change that,

21   Mr. Butler?

22           MR. BUTLER:  No, Your Honor.

23           THE COURT:  So, again, anything else that we need to

24   cover, Ms. Lawless?

25           MS. LAWLESS:  No, sir.

1          THE COURT:  Mr. Butler?

2          MR. BUTLER:  No, Your Honor.

3          THE COURT:  Thank you.  We'll see you on December 16.

4       (Proceedings concluded at 2:18 p.m.)

5                    C E R T I F I C A T E

6       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

7    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9
        _____s/Dena Legg_____          September 25, 2017
10    Certified Court Reporter No. 20042A157     Date
      Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25